UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| **JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,** | ) ) ) ) | |
| Plaintiff, | ) ) | Civ. No. 2:23-mc-00019-JTF-tmp |
| v. | ) ) ) | |
| **SAVE ON SP, LLC,** | ) ) | |
| Defendant. | ) ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**

Before the Court is Plaintiff Johnson & Johnson Health Care Systems, Inc.'s ("JJHCS's") Motion to Compel Compliance with the Subpoena Issued to Third Party Accredo Health Group, Inc. ("Accredo"), filed on May 25, 2023. (ECF No. 2.) In the motion, JJHCS argues that Accredo possess documents relevant to an underlying litigation against Defendant Save On SP, LLC, ("SaveOn") currently proceeding in the District of New Jersey. Accredo filed a response, styled as a Motion for Discovery Stay in Alternative to Response in Opposition to Motion to Compel, on June 9, 2023. (ECF No. 18.) JJHCS moved for leave to file a reply, which the Court granted on June 21, 2023. (ECF No. 24.) For the below reasons, the Motion is hereby **GRANTED IN PART** and **DENIED IN PART**.

**I.   FACTUAL BACKGROUND**

This case stems from a third-party subpoena issued to non-party Accredo to provide documents relevant to an action filed by JJHCS against SaveOn. In the underlying litigation, JJHCS accuses SaveOn of operating "a scheme designed to siphon off CarePath patient assistance

funds for its own benefit and that of its health insurance industry partners." (ECF No. 2, 4.) CarePath is JJHCS's patient assistance program, which "helps patients with commercial health insurance afford medications sold by [Johnson & Johnson] companies" by covering copayment and coinsurance costs. (*Id.*) JJHCS alleges that Accredo, a specialty pharmacy, is integral to this scheme along with its parent company, Express Scripts, Inc. ("ESI"). The complaint alleges that SaveOn works with plans and insurers to improperly designate necessary drugs as "non-essential" under the Affordable Care Act, allowing them to bypass certain copay restrictions imposed by the law and raise the price of the drugs by up to "thousands of dollars per month." (*Id.* at 5.) Relevant to JJHCS are those drugs produced by Janssen Pharmaceutical Companies of Johnson & Johnson ("Janssen"), the copay costs of which may be covered by CarePath. (*Id.* at 7.) SaveOn bills Janssen drug patients the inflated amount with the option to reduce costs by agreeing to enroll in SaveOn's program. When patients enroll, SaveOn then bills CarePath and other manufacturer patient assistance programs to cover the excessive copay cost once billed by SaveOn. (*Id.* at 5.) However, CarePath's terms and conditions forbid this practice, as CarePath "may not be used with any other coupon, discount, prescription savings card, free trial, or other offer" such as SaveOn. (*Id.* at 8.)

Accredo is allegedly involved in this scheme as the specialty pharmacy for ESI, the nation's largest pharmacy benefit manager. (ECF No. 2, 6.) Pharmacy benefit managers manage prescription drug benefits on behalf of health insurance plans; ESI (as well as Accredo) is a subsidiary of health insurer Cigna. (*Id.*) SaveOn works exclusively with ESI to market its program to patients and Accredo fills prescriptions for ESI managed plans. JJHCS alleges that if patients are not enrolled in SaveOn immediately upon receiving their inflated bill from the company, Accredo denies the prescription and transfers the patient to SaveOn for enrollment. (*Id.* at 5.) Once they enroll, SaveOn and Accredo allegedly conspire to bill CarePath for the inflated copay, while

2

the patient merely sees a price reduction. ESI, in turn, charges the patient's insurance plan a fee equal to 25 percent of the "savings" (i.e. excess funds) gotten from billing CarePath the inflated amount. This fee is then split with SaveOn. JJHCS alleges that this scheme has caused them "to pay at least $100 million more in copay assistance than it otherwise would have, depleting the support available for patients who cannot afford the ever-increasing copay obligations imposed upon them by their health insurers." (ECF No. 2, 6.)

In May 2022, JJHCS brought a two-count complaint against SaveOn: 1) tortious interference with contract, and 2) deceptive trade practices under New York General Business Law § 349. (*Id.* at 7.) The complaint survived a motion to dismiss filed by SaveOn in January 2023. (*Id.* at 10.) JJHCS served the present subpoena on January 17, 2023. (ECF No. 3-1, 6.) The subpoena contains 20 requests for production which seek a wide variety of information. Documents sought range from "all documents concerning the relationship between Accredo and SaveOnSp, including any contracts," to transaction-level data for prescriptions filled by Accredo. (*Id.* at 13-17.) Both parties state that despite multiple meetings, no agreement was reached regarding the production of a single document, although the briefs dispute where said intransigence lies. Accredo maintains that it consistently offered to produce non-privileged, relevant documents that JJHCS had not already received from SaveOn's party discovery productions, but JJHCS claims that Accredo never specified which documents this referred to and that they sought to unnecessarily delay production past the close of discovery.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 45 "allows parties to issue subpoenas directing non-parties to produce documents relevant to a litigation." *Fusion Elite All Stars v. Rebel Athletic Inc.*, No.

3

21-mc-00028-SHL-tmp, 2022 WL 1274965, at *4 (W.D. Tenn. Apr. 28, 2022). These third party subpoenas are subject to the same scope as general discovery under Rule 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Boodram v. Coomes*, No. 1:12CV-00057-JHM, 2016 WL 11333773, at *3 (W.D. Ky. Jan. 5, 2016) (quoting Fed. R. Civ. P. 26(b)(1)). While the scope is identical, third-party subpoenas do raise issues not present in party discovery that require consideration. Courts should take care to "balance the need for the discovery against the burden imposed on the person ordered to produce documents, and that person's status as a nonparty is a factor weighing against disclosure." *Arclin USA, LLC v. Vits Tech. GmbH,* 2:20-mc-48, 2020 WL 6882600, at *2 (S.D. Ohio Nov. 24, 2020). Further, the general limitation on discovery that is "unreasonably cumulative or duplicative or that [] can be obtained from some other source that is more convenient, less burdensome, or less expensive," applies in this context to prevent discovery from third parties that may be obtained from a party to the underlying litigation. *Baumer v. Schmidt*, 423 F. Supp. 3d 393, 408 (E.D. Mich. 2019).

### III.   LEGAL ANALYSIS

JJHCS states that it seeks five broad categories of documents and communications: 1) transaction level data of prescription fills; 2) complaints/communications from patients or groups about the alleged SaveOn scheme; 3) documents and communications regarding Accredo enrolling patients in SaveOn; 4) documents and communications regarding the alleged scheme between Accredo and ESI; and 5) documents and communications regarding a specific ESI marketing video dealing with the SaveOn program. (ECF No. 2, 11.) The Motion does not seek to enforce compliance with Request Nos. 1 and 2(i). (*Id.* at 12, n.2.) JJHCS argues that Accredo has not

4

identified any specific burden preventing them from producing documents, and indeed have admitted that they possess many relevant documents. Accredo's argues that these documents are duplicative of documents JJHCS may obtain from SaveOn through party discovery, and that the motion should either be denied or held in abeyance until party discovery is completed. Accredo further notes that the District of New Jersey already denied a request for discovery related to "non-Janssen drugs and patients," but JJHCS states they are amenable to the subpoena being modified to reflect this restriction.

After review, the Court believes that certain of the requests are likely to be duplicative of requests of either SaveOn or ESI, but that others will likely produce relevant, non-duplicative documents and data. First, the Court again notes that Request Nos. 1 and 2(i) are not at issue in the present motion. The rest of Request No. 2 is duplicative of other requests within the subpoena is at points impermissibly general, and seeks documents likely in SaveOn's possession. (ECF No. 3-1, 9) (seeking "any communications concerning manufacturer copay assistance programs and SaveOnSp's negotiations with Accredo related the [sic] SaveOnSP Program.") Thus, Request No. 2 is **DENIED**. Request No. 4 is similarly likely to be duplicative, as it seeks only information related to the relationship between Express Scripts and SaveOn, information that is likely to be held by either of those entities. Request No. 4 is **DENIED**. SaveOn represents in an affidavit that it has already produced the Agreement sought in Request No. 6, and any documents concerning that agreement are likely to be held by the parties that were party to that agreement, namely Express Scripts and SaveOn. Request No. 6 is thus similarly **DENIED**. Request No. 8 seeks information that SaveOn represents it has already provided, and it is unclear why Accredo would have unique relevant information regarding the drugs CarePath covers, the amount of CarePath coverage available per drug, CarePath's terms and conditions, and changes to SaveOn's program. This

information could potentially show knowledge of a breach of those terms and conditions or other violations, but Accredo is not a party to the underlying litigation and no claims are asserted against them. Accordingly, Request No. 8 is **DENIED**. The same reasoning applies to Request Nos. 11-15 which seek documents related to SaveOn's application of the Affordable Care Act, their "inflated co-pay," the savings earned by SaveOn, and documents concerning an alleged "25% joinder agreement between SaveOn and health plans." (ECF No. 3-1, 14-15.) This information is likely to reside with SaveOn, and any unique internal documents regarding Accredo's understanding of SaveOn's actions in this case would be irrelevant given that they are not a party to the underlying lawsuit. These requests are similarly **DENIED**.

However, the Court believes that the remaining requests seek unique information in a way that is not unduly burdensome. Accredo's request to stay all third party discovery until the conclusion of party discovery is a general request with no limiting principle, and does not reflect discovery practice as generally performed. Under the rules, the fact that SaveOn may have certain overlapping documents is a factor that weighs against compelling discovery, but not a reason to sequence discovery in so rigid a manner.

Request No. 3 seeks "all documents and communications showing the extent to which Accredo is involved with enrolling patients into the SaveOnSp program," which is likely to provide the underlying case with information regarding the operation, or non-operation, of the alleged scheme. Again, JJHCS alleges that the scheme could not have operated without Accredo's involvement in this way. Accordingly, Request No. 3 is **GRANTED**. Similarly, Request No. 5 seeks two types of documents: communications between Accredo and ESI regarding administration of SaveOn and internal communications at Accredo regarding its role related to ESI and SaveOn. The Court believes that said documents are likely to be relevant to demonstrating the

operation or non-operation of the alleged underlying scheme and seek documents that SaveOn is not a party too. Distinct from the information sought in Request Nos. 11-15, the documents sought here are more targeted towards Accredo and ESI's direct involvement, which could provide a clearer picture of the alleged violative practices as opposed to merely showing a non-party's knowledge or interpretation of the practices. Request No. 5 is accordingly **GRANTED**. Request No. 7, which seeks "all documents concerning the SaveOnSP IPBC Video presentation as discussed in the Complaint," presents little burden and is targeted to lead to information regarding a specific piece of evidence central to the claims of the case. Accordingly, Request No. 7 is **GRANTED** as well. Request No. 9 proposes a specific type of document to be produced: those dealing with "'point of sale claim rejection' at pharmacies to 'facilitate warm transfer of members to SaveonSP [sic],' including all related communications with pharmacies." The Court believes that this is likely to produce responsive and relevant documents regarding the alleged scheme's function too, and **GRANTS** the request. Materials responsive to Request 10, as well, may demonstrate Accredo's role in marketing the program, and internal documents regarding that marketing may reflect SaveOn's aims and strategy regarding patient signups. Request No. 10 is **GRANTED**.

Accredo makes a more specific argument against Request No. 16, which seeks "All documents Accredo has received reflecting complaints, concerns, or inquiries about SaveOnSp's operations, services, and/or business model, including without limitation from patients, patient advocacy groups, health plan sponsors, governmental agencies, and Express Scripts." (ECF No. 3-1, 15.) Accredo argues that the burden in producing complaints would be enormous, as "Accredo dispenses more than seven million prescriptions per year and necessarily receives a significant volume of complaints." (ECF No. 18, 12.) Finding "those that are specific to SaveOn would be

7

exceptionally burdensome." (*Id.* at 13.) But Accredo does not identify how said complaints are stored, nor why a simple search term query for "SaveOn" related complaints would not suffice to fulfill this request. Without more specifics regarding how complaints are recorded, this objection merely amounts to Accredo alleging, not demonstrating, an undue burden. Further, it appears that ESI has admitted that it possesses relevant documents responsive to this request and that SaveOn does not, making it likely Accredo may possess similar complaints. (ECF No. 3-11, 2.) Accordingly, Request No. 16 is **GRANTED**.

The remaining requests all relate to transactional level data involving filled and rejected patient prescriptions of Janssen drugs that JJHCS seeks from Accredo. While the subpoena does not distinguish between Janssen and non-Janssen drugs, a subsequent court order from the District of New Jersey requires that any requests or productions exclude data relating to exclusively non-Janssen drugs. In a declaration attached to Accredo's response, SaveOn's counsel represents that they have provided "transaction-level data for patients who filled a prescription for a Janssen drug[.]" (ECF No. 19.) The briefs do not expound on what data has been produced by SaveOn and what JJHCS still believes it requires. The data sought from Accredo is vast and granular, representing six years worth of individual transactions for a massive pharmacy. The burden of producing said data in a recognizable and readable form is likely to be great. The Court does not seek to waste resources if such data is likely to be merely duplicative of what SaveOn has already produced. Accordingly, the Court will hold ruling on Request Nos. 17-20 in abeyance pending additional briefing from JJHCS, which should explain the data it possesses from SaveOn and how it believes this data is insufficient or otherwise different from the data it seeks from Accredo. Said additional briefing shall be due ten days from the entry of this order, with Accredo given an additional ten days to respond.

## IV.  CONCLUSION

In conclusion, the Court **GRANTS** Request Nos. 3, 5, 7, 9, 10, and 16. The Court **DENIES** Request Nos. 2(ii)-(iii), 4, 6, 8, and 11-15. Ruling on Request Nos. 17-20 is held in abeyance until further briefing is submitted according to the schedule above.

**IT IS SO ORDERED** this 24th day of July 2023.

*s/John T. Fowlkes, Jr.*
**JOHN THOMAS FOWLKES, JR.**
**UNITED STATES DISTRICT JUDGE**