**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**IN THE WESTERN DIVISION**

| | | |
|---|---|---|
| **JOHNSON & JOHNSON HEALTH CARE SYSTEMS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:23-mc-00019-JTF-tmp** |
| | ) | |
| | ) | |
| **SAVE ON SP, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER GRANTING IN PART PLAINTIFF'S SUPPLEMENTAL MOTION TO COMPEL

Before the Court is Plaintiff Johnson & Johnson Health Care Systems, Inc.'s ("JJHCS") Supplemental Motion in Further Support of its Motion to Compel Pursuant to the Court's July 24, 2023 Order, filed on August 18, 2023. (ECF No. 33.) Accredo filed its Response on August 18, 2023, and JJHCS filed a Motion for Leave to File a Supplemental Brief in Further Support of its Motion on August 16, 2023.[1] (ECF Nos. 34 & 30.) JJHCS also sought leave to file Additional Exhibits and Supplemental Authority on September 11, 2023, and November 22, 2023, respectively. (ECF Nos. 35 & 38.) Accredo filed a Response in Opposition to JJHCS's November 22, 2023 Motion to file supplemental authority on November 27, 2023. (ECF No. 39.) For the reasons set forth below, JJHCS's Supplemental Motion to Compel and Motion for Leave to File Reply in support thereof, as well as its Motion for Leave to File Additional Exhibit and Motion for Leave to File Notice of Supplemental Authority are **GRANTED IN PART**.

---

[1] JJHCS had to refile its Supplemental Motion in Further Support of its Motion to Compel, and Accredo had to refile its Response due to filing errors, leading to this unusual situation where JJHCS's Reply appears to predate the corresponding Motion and Response.

# I.   BACKGROUND[2]

This case arises from a third-party subpoena issued to non-party Accredo to provide documents relevant to an action JJHCS brought against SaveOnSP in the U.S. District Court for the District of New Jersey. In the underlying litigation, JJHCS accuses SaveOnSP of operating "a scheme designed to siphon off CarePath patient assistance funds for its own benefit and that of its health insurance industry partners." (ECF No. 2, 4.) JJHCS alleges that Accredo, a specialty pharmacy, is integral to this scheme along with its parent company, Express Scripts, Inc. ("ESI"). The complaint alleges that SaveOnSP works with plans and insurers to improperly designate necessary drugs as "non-essential" under the Affordable Care Act, allowing them to bypass certain copay restrictions imposed by the law and raise the price of the drugs by up to "thousands of dollars per month." (*Id.* at 5.)

In its prior Order, the Court granted JJHCS's Motion with respect to Request Nos. 3, 5, 7, 9, 10, and 16 which sought information pertaining to ESI and Accredo's involvement, marketing materials, and complaints. (ECF No. 25, 9.) The Court held ruling on Request Nos. 17-20 in abeyance pending additional briefing explaining the data JJHCS received from SaveOnSP and how it believes this data is insufficient or otherwise different from the data it seeks from Accredo. (*Id.*) These outstanding requests relate to transaction-level data involving filled and rejected patient prescriptions of Janssen drugs. (*Id.*)

# II.   LEGAL STANDARD

Federal Rule of Civil Procedure 45 "allows parties to issue subpoenas directing non-parties to produce documents relevant to a litigation." *Fusion Elite All Stars v. Rebel Athletic Inc.*, No.

---

[2] The Court briefly summarizes the facts that were detailed in its prior Order Granting in Part and Denying in Part Plaintiff's Motion to Compel. (ECF No. 25, 1-3.)

21-mc-00028-SHL-tmp, 2022 WL 1274965, at *4 (W.D. Tenn. Apr. 28, 2022). These third-party

subpoenas are subject to the same scope as general discovery under Rule 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit. Information within
> this scope of discovery need not be admissible in evidence to be discoverable.

*Boodram v. Coomes*, No. 1:12CV-00057-JHM, 2016 WL 11333773, at *3 (W.D. Ky. Jan. 5, 2016)

(quoting Fed. R. Civ. P. 26(b)(1)). While the scope is identical, third-party subpoenas do raise

issues that are not present in party discovery yet require consideration. Courts should take care to

"balance the need for the discovery against the burden imposed on the person ordered to produce

documents, and that person's status as a nonparty is a factor weighing against disclosure." *Arclin*

*USA, LLC v. Vits Tech. GmbH*, 2:20-mc-48, 2020 WL 6882600, at *2 (S.D. Ohio Nov. 24, 2020).

Further, the general limitation on discovery that is "unreasonably cumulative or duplicative or that

[] can be obtained from some other source that is more convenient, less burdensome, or less

expensive," applies in this context to prevent discovery from third parties that may be obtained

from a party to the underlying litigation. *Baumer v. Schmidt*, 423 F. Supp. 3d 393, 408 (E.D. Mich.

2019).

### III.     ANALYSIS

JJHCS contends that it requires the data sought in Request Nos. 17-20 to calculate its damages

in the underlying litigation. It maintains that it can only obtain that information from Accredo and

its parent company ESI, which is the subject of a separate motion to compel in the U.S. District

Court for the Eastern District of Missouri. (ECF No. 33, 2.) JJHCS indicates that it tried to acquire

this material from SaveOnSP, but they lacked much of the information sought because they are

3

not a pharmacy. (*Id.*) As a result, JJHCS now turns to Accredo, the pharmacy that SaveOnSP works

with. (*Id.*) JJHCS states that it has received some data from SaveOnSP pertaining to patients who

filled a prescription for a Janssen drug and were enrolled in SaveOnSP's program but argues that

this information is insufficient to gain an accurate and complete understanding of its damages and

the extent to which SaveOnSP has harmed JJHCS. (*Id.* at 3.) The information that JJHCS seeks to

get from Accredo is as follows:

> (1) coupon amount, (2) information on how these payments can be linked to the transaction claims/data, (3) type of insurance, (4) insurance/health plan BIN number, (5) insurance/health plan PCN number, (6) units returned or otherwise affected by the transaction, (7) information sufficient to identify the type of transaction, (8) any discounts, rebates, or other price adjustments or offsets, (9) total amount paid to the pharmacy for the prescription, (10)[] voucher amount, (11) bridge benefit payment, (12) net consumer payment after subtracting co-pay, co-insurance, deductible, coupon, voucher, bridge benefit, or other assistance, (13) insurance/health plan cost submitted, and (14) insurance/health plan amount paid to pharmacy.
>
> (*Id.*)

JJHCS asserts that the categories described above could be contained in data housed with

Accredo or its affiliates. (*Id.*) This information is sought via Request Nos. 17-20. (*See* ECF No. 3-

1, 15-16.) Accredo does not dispute that it has this information. Their opposition to this Motion is

instead predicated on relevance and burden arguments. (ECF No. 34, 3-10.) The instant dispute

does not turn on the specifics of each discrete numbered request except for Request No. 20 which

seeks transaction-level data for all patients regardless of whether they filled prescriptions for

Janssen drugs. (ECF No. 3-1, 16.) Hence, for the purposes of evaluating this Motion, the Court

construes this as two disputes, one concerning whether Accredo must turn over transaction-level

data, and another pertaining to Request No. 20.

JJHCS argues that the 14 fields of data it seeks are relevant to its damages analysis because

the transactional data related to patients' purchases of Janssen drugs with and without enrolling in

SaveOnSP will allow them to determine the exact effect that SaveOnSP has on prescription prices.

(ECF No. 33, 4.) In response, Accredo argues that JJHCS has failed to show that this information is relevant when it has already received 22 fields from SaveOnSP. (ECF No. 34, 3-4.)

The Court finds that JJHCS's argument with respect to relevance is persuasive.  If SaveOnSP is liable to JJHCS for surcharges on Janssen drugs, JJHCS must determine that surcharge as a sum certain. JJHCS indicates that it intends to isolate the SaveOnSP-specific expense variable by comparing the price paid for each drug while a patient is enrolled in SaveOnSP with the price paid without SaveOnSP. (ECF No. 33, 4.) Accredo does not argue that this calculation would be infeasible.  Rudimentary arithmetic counsels that by subtracting the price a patient paid for a drug while not enrolled in SaveOnSP as well as any incidental expenses from the price paid while enrolled in SaveOnSP one is left with just the surcharge related to SaveOnSP. The 14 data fields that JJHCS seeks all appear to be related to making that calculation while accounting for any variables that might get in the way. It is unclear how JJHCS could calculate its damages otherwise. Hence, the Court concludes that the information is relevant.

Next the Court considers whether requiring Accredo to produce this information would be unduly burdensome. In its prior Order, the Court noted that the information JJHCS seeks from Accredo is "vast and granular, representing six years' worth of individual transactions for a massive pharmacy," and that "[t]he burden of producing said data in a recognizable and readable form is likely to be great." (ECF No. 25, 8.) In its Response, Accredo adds that the data JJHCS seeks is vast and varied, and likely resides in several different repositories and tables of data. (ECF No. 34, 7.) They argue that this undertaking will require the restoration of archived data, which will be expensive and take several weeks, and may even exceed the capabilities of a typical Excel spreadsheet. (*Id.*) Accredo mentions that its database does not provide an easy, reliable way to limit the data just to patients who participate in the SaveOnSP program. (*Id.* at 8.)

The Court does not doubt that compliance with JJHC's discovery requests will require a significant undertaking. However, it must consider this dispute within the broader context of this litigation, as document production may be unduly burdensome in a personal injury case yet proportional in a high-profile complex dispute. The underlying litigation is centered on a scheme that resulted in JJHCS sustaining $100 million in damages over several years. (ECF No. 3-1, 21.) With that in mind, the Court cannot agree with Accredo that the production of highly relevant information that JJHCS is otherwise unable to procure is unduly burdensome merely because it takes a few weeks and may require some problem-solving in Excel.

The Court concludes by addressing a small issue with Request No. 20. This request seeks "[e]lectronic prescription-level transaction data for all patients that had the opportunity to enroll in SaveOnSP (i.e., were members of plans that offered SaveOnSP) and declined to do so, irrespective of whether they filled prescriptions for Janssen or non-Janssen drugs. (ECF No. 3-1, 16.) The Court acknowledged that an order from the District of New Jersey required that any requests or productions exclude data relating to exclusively non-Janssen drugs in its prior Order. (ECF No. 25, 8.) The Court adhered to that limitation in its prior Order, and the Parties offer no reason why it should depart from that position here. Accordingly, Request No. 20 is narrowed to data related to patients who filled prescriptions for Janssen drugs.

Notwithstanding the narrowing construction to Request No. 20, the Court **GRANTS** Request Nos. 17-20.

### IV.   CONCLUSION

In conclusion, the Court **GRANTS** Request Nos. 17-20, but **NARROWS** Request No. 20 to data for patients who filled prescriptions for Janssen drugs.

**IT IS SO ORDERED** this 15th day of April, 2024.

_**s/John T. Fowlkes, Jr.**_
JOHN T. FOWLKES, JR.
United States District Judge